PALMER, J.
 

 The State appeals the trial court’s order granting defendant Samantha Converse’s motion to dismiss a charge of aggravated battery by a detained person
 
 [1]
 
 on double jeopardy grounds. Determining that Converse’s motion to dismiss was legally insufficient, we reverse.
 

 While in prison, Converse threw hot coffee in another inmate’s face, causing third-degree burns. As a result of the incident, the Department of Corrections (DOC) placed Converse in disciplinary confinement and referred her to close management. Meanwhile, the State charged Converse with committing the crime of aggravated battery by a detained person. She filed a motion to dismiss the charge, arguing that her prosecution violated double jeopardy because DOC had already punished her for the incident. The trial court granted the motion and dismissed the charge. The State timely appealed.
 

 The trial court erred in granting the motion to dismiss, because Converse failed to demonstrate that her administrative discipline was criminal under the controlling statute or rule or that the statutory scheme was so punitive as to transform the discipline into a criminal penalty.
 

 In
 
 Hudson v. United States,
 
 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997), the United States Supreme Court explained the proper analysis of this type of double jeopardy question:
 

 The Double Jeopardy Clause provides that no “person [shall] be subject for the same offence to be twice put in jeopardy of life or limb.” We have long recognized that the Double Jeopardy Clause does not prohibit the imposition of all additional sanctions that could, “ ‘in common parlance,’ ” be described as punishment.
 
 United States ex rel. Marcus v. Hess,
 
 317 U.S. 537, 549, 63 S.Ct. 379, 387, 87 L.Ed. 443 (1943) (quoting
 
 Moore v. Illinois,
 
 14 How. 13, 19, 14 L.Ed. 306 (1852)). The Clause protects only against the imposition of multiple
 
 criminal
 
 punishments for the same offense,
 
 Helvering v. Mitchell,
 
 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938); see also
 
 Hess, supra,
 
 at 548-549, 63 S.Ct. at 386-387 (“Only” “criminal punishment” “subjects] the defendant to ‘jeopardy’ within the constitutional meaning”);
 
 Breed v. Jones,
 
 421 U.S. 519, 528, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346 (1975) (“In the constitutional sense, jeopardy describes the risk that is traditionally associated with a criminal prosecution”) ....
 

 Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction.
 
 Helvering, supra,
 
 at 399, 58 S.Ct. at 633. A court must first ask whether the legisla
 
 *80
 
 ture, “in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other.”
 
 [United States v. Ward,
 
 448 U.S. 242, 248, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980) ]. Even in those cases where the legislature “has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect,”
 
 id.,
 
 at 248-249,100 S.Ct. at 2641, as to “transfor[m] what was clearly intended as a civil remedy into a criminal penalty,”
 
 Rex Trailer Co. v. United States,
 
 350 U.S. 148, 154, 76 S.Ct. 219, 222, 100 L.Ed. 149 (1956). In making this latter determination, the factors listed in
 
 Kennedy v. Mendoza-Martinez,
 
 372 U.S. 144, 168-169, 83 S.Ct. 554, 567-568, 9 L.Ed.2d 644 (1963), provide useful guideposts, including: (1) “[w]hether the sanction involves an affirmative disability or restraint”; (2) “whether it has historically been regarded as a punishment”; (3) “whether it comes into play only on a finding of
 
 scienter”;
 
 (4) “whether its operation will promote the traditional aims of punishment-retribution and deterrence”; (5) “whether the behavior to which it applies is already a crime”; (6) “whether an alternative purpose to which it may rationally be connected is assignable for it”; and (7) “whether it appears excessive in relation to the alternative purpose assigned.” It is important to note, however, that “these factors must be considered in relation to the statute on its face,”
 
 id.,
 
 at 169, 83 S.Ct. at 568, and “only the clearest proof’ will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty,
 
 Ward, supra,
 
 at 249, 100 S.Ct. at 2641-2642 (internal quotation marks omitted).
 

 Id.
 
 at 98-100, 118 S.Ct. 488. Accordingly, under
 
 Hudson,
 
 the trial court was required to apply a two-step analysis to determine whether the statute or regulation under which Converse was disciplined was, on its face, civil or criminal.
 
 [2]
 
 The Supreme Court later explained a reason for the facial nature of this analysis:
 

 In
 
 Hudson, ...
 
 this Court expressly disapproved of evaluating the civil nature of an Act by reference to the effect that Act has on a single individual. Instead, courts must evaluate the question by reference to a variety of factors considered in relation to the statute on its face ....
 

 [[Image here]]
 

 ... [A]n “as-applied” analysis [of the Act’s effect on a single individual] would prove unworkable. Such an analysis would never conclusively resolve whether a particular scheme is punitive and would thereby prevent a final determination of the scheme’s validity under the Double . Jeopardy ... Clause[ ].... [Confinement is not a fixed event.... [I]t extends over time under conditions that are subject to change. The particular features of confinement may affect how a confinement scheme is evaluated to determine whether it is civil rather than punitive, but it remains no less true that the query must be answered definitively. The civil nature of a confinement scheme cannot be altered based merely
 
 *81
 
 on vagaries in the implementation of the authorizing statute.
 

 Seling v. Young,
 
 531 U.S. 250, 262-63, 121 S.Ct. 727, 148 L.Ed.2d 734 (2001) (quotation marks and citations omitted).
 
 See also United States v. Mayes,
 
 158 F.3d 1215 (11th Cir.1998) (analyzing prison-discipline double jeopardy argument under
 
 Hudson).
 

 Here, the statute or regulation under which Converse was disciplined was not provided to the trial court; therefore, the motion to dismiss was insufficiently pled. Accordingly, we reverse the trial court’s dismissal order.
 

 REVERSED.
 

 ORFINGER, C.J., and GRIFFIN, J., concur.
 

 [1]
 

 . §§ 784.082(1), .045, Fla. Stat. (2008).
 

 [2]
 

 . The State cites
 
 Larkin v. State,
 
 558 So.2d 486 (Fla. 5th DCA 1990), in seeking a reversal of the trial court's order.
 
 Larkin
 
 held that "the double jeopardy provisions of the Florida and Federal Constitutions do not apply to a judicial proceeding following an administrative proceeding.”
 
 Id.
 
 (footnotes omitted). However,
 
 Larkin's
 
 holding that administrative sanctions are always civil is not controlling, as it predates
 
 Hudson
 
 and cannot be reconciled with
 
 Hudson’s
 
 analytical framework.